IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| TODD CONLEY,<br>an individual,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>DANIEL S. VACANTI,<br>an individual,<br><br>　　　　　　　Defendant. | Case No. 0:23-cv-60384-AHS |

**DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Daniel S. Vacanti files this motion to dismiss the following counts in the Second Amended Complaint ("SAC"): Count 1 (Copyright Infringement), Count 2 (Florida's Deceptive and Unfair Trade Practices ("FDUTPA")), and Count 3 (Civil Theft).

Mr. Conley's SAC alleges facts asserting a time-barred copyright ownership claim, and then attempts to bootstrap other non-copyright legal theories to the same facts. Mr. Conley's claim for copyright infringement concerns mainly ownership and is barred by the Copyright Act's three-year statute of limitations. As the SAC makes clear, Mr. Conley has been on notice of the alleged copyright ownership dispute since July 2019. Mr. Conley's claims under the FDUTPA and for civil theft are preempted by the Copyright Act, and to the extent not preempted, the civil theft claim fails as it restates Mr. Conley's breach of contract claim.

The remaining state law claims were brought pursuant to the Court's supplemental jurisdiction, 28 U.S.C. § 1367. SAC ¶ 8. In the event the Court dismisses Plaintiff's copyright claim (Count 1), the Court should decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss this lawsuit in its entirety. 28 U.S.C. § 1367(c) (granting the district court discretion whether

1

to exercise supplemental jurisdiction if the district court has dismissed all claims over which it has original jurisdiction). Diversity jurisdiction has not been pled as there is no amount in controversy pled. *See* SAC.

## INTRODUCTION

From 2013 to 2019, Mr. Conley and Mr. Vacanti worked together to develop, market, and license a software for an agile metrics-based tool that was based on an agile metrics spreadsheet Mr. Vacanti created in 2007. This tool came to be known as "Actionable Agile." In July 2019, Mr. Conley abandoned the parties' business and quit working on Actionable Agile, while Mr. Vacanti continued the venture to develop, market, license, and sell Actionable Agile. In 2020, Mr. Conley applied to register the post-2016 version of Actionable Agile with the United States Copyright Office, omitting Mr. Vacanti as an author and failing to identify Mr. Vacanti's pre-existing work that is the foundation of the software Mr. Conley worked on. In the SAC, Mr. Conley refers to the post-2016 versions of Actionable Agile as the "Copyrighted Software."

## PLED FACTS

In or around August 2013, Mr. Conley and Mr. Vacanti agreed to build out an Agile metrics-based product into a software that the parties could market, which eventually became known as "Actionable Agile." SAC ¶¶ 11-12. Together, the parties, through their "joint venture/partnership," marketed and licensed Actionable Agile to third parties until June 2019. SAC ¶¶ 16-17, 27, 75-76. As of July 1, 2019, Mr. Conley left the "joint venture/partnership" and quit working with Mr. Vacanti on Actionable Agile. SAC ¶¶ 11-13, 16-21, 27, 60, 70-71. After Mr. Conley's departure, Mr. Vacanti continued operating the "joint venture/partnership" to develop, maintain, market, sell, and license Actionable Agile to third parties after hiring a company, 55Degrees, to replace Mr. Conley. SAC ¶¶ 18, 25; SAC Ex. B ("ActionableAgile™ by 55degrees"). Mr. Vacanti stopped paying Mr. Conley after

Mr. Conley quit on July 1, 2019.  SAC ¶ 18.  Mr. Conley alleges he is the sole owner of Actionable Agile.  SAC ¶¶ 22, 56, 61, 63.[1]

According to Mr. Conley, the parties' agreement, under which Mr. Conley allegedly licensed Actionable Agile to Mr. Vacanti, terminated on July 1, 2019 when he stopped receiving "royalty" payments, and any subsequent "sales, modification, and use of the Copyrighted Software" was improper and, among other things, constitutes copyright infringement and "<u>is inconsistent with Conley's ownership rights in the Copyrighted Software</u>."  SAC ¶ 63 (underline added); *see also* SAC ¶¶ 18-21, 32-39, 60 (The parties' agreement for development, marketing, and licensing Actionable Agile "terminated on July 1, 2019, upon Defendant's material breach of and failure to pay sums owed to Conley pursuant to the Agreement.").

## LEGAL STANDARD

To withstand a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Id.*  At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  This principle does not, however, apply to legal conclusions in the complaint. *Iqbal*, 556 U.S. at 678.  Moreover, although the court must accept the well-pled facts as true and construe the complaint in the light most favorable to the plaintiff, the complaint must set

---

[1] Though Mr. Conley's SAC removed certain doomed claims, Mr. Vacanti's First Amended Complaint alleged that Mr. Vacanti "falsely claimed that he is the owner of the Copyrighted Software." *See* Doc. 8, FAC ¶¶ 61, 73.  Even without these express allegations, the ownership dispute is clear.  Mr. Conley alleges that Mr. Vacanti continued exercising dominion over the Copyrighted Software after July 1, 2019 and that Mr. Vacanti's actions since July 1, 2019 are "<u>inconsistent with Conley's ownership rights in the copyrighted software</u>."  SAC ¶¶ 62-63.

3

forth at least sufficient facts to demonstrate the elements of a prima facie claim. *Saunders v. Hunter*, 980 F. Supp. 1236, 1241-43 (M.D. Fla. 1997) (dismissing claim where complaint failed to allege essential element of that claim); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) ("[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." (citation omitted)).

Where a statute of limitations defense appears on the face of a complaint, it may be raised on a motion to dismiss under Rule 12(b)(6). *Mesocap Indus. v. Torm Lines*, 194 F.3d 1342 (11th Cir. 1999) (affirming grant of motion to dismiss for filing an untimely action); *White v. Padgett*, 475 F.2d 79, 82 (5th Cir. 1973).

## ARGUMENT AND AUTHORITY

**A. Mr. Conley's copyright infringement claim is barred by the statute of limitations because its gravamen is ownership, and Mr. Conley learned or reasonably should have learned in July 2019 that his ownership rights were being violated.**

The Copyright Act provides a three-year statute of limitations for actions brought pursuant to its provisions. 17 U.S.C. § 507(b); *Webster v. Dean Guitars*, 955 F.3d 1270, 1275 (11th Cir. 2020). The Eleventh Circuit recently joined other circuits in "hold[ing] that, unlike an ordinary copyright infringement claim, which accrues for each infringing act, a claim concerning mainly ownership accrues only once" and that is "when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his ownership rights." *Webster*, 955 F.3d at 1276; s*ee also Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011) ("An ownership claim accrues only once, when 'a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right.'"). A copyright ownership claim is extinguished altogether if not brought within three years of when the plaintiff knew or should have known that his ownership rights were being violated. *Webster*, 955 F.3d at 1276-77. In adopting the "knew or should have known" standard, the Eleventh Circuit imputes constructive knowledge to a plaintiff even in the absence of express notice. *See*, *e.g., Kwan*, 634 F.3d at 228;

4

*Calhoun v. Lilenas Publ'g*, 298 F.3d 1228, 1237 (Birch, J. concurring)) (*cited with approval in Webster*, 955 F.3d at 1277) (knowledge imputed to plaintiff despite claimed ignorance).

The gravamen of a copyright claim is ownership if ownership of the copyright is the only disputed issue. *Webster*, 955 F.3d at 1276; *Lott-Johnson v. Estate of Goreau*, No. 1:14-cv-03104-WSD, 2015 WL 4389979, at *3 (N.D. Ga. July 15, 2015) (In a copyright infringement case where ownership is not the gravamen of the claim, ownership is not at issue—the dispute is instead typically "based on whether copying infringed on a plaintiff's rights or whether the materials taken were original." (quoting *Kwan*, 634 F.3d at 249)).  Stated differently, if there is not dispute as to whether copying occurred, but rather, the only question is ownership, the claim is for copyright ownership, not infringement. *See Webster*, 955 F.3d at 1276 ("Webster's main argument is that he owns the lighting graphic and the Appellees have reproduced it without his consent.  The parties agree that Dean has reproduced the graphic on several guitar models without Webster's permission, leaving ownership the only disputed issue.").  The statute of limitations cannot be avoided "by portraying an action as one for infringement when copyright ownership rights are the true matter at issue." *Black Box Royalties, Inc. v. Universal Musical Publishing, Inc.*, 2017 WL 3508727, at *6-7 (N.D. Ga. Feb. 21, 2017).  In other words, if a freestanding ownership claim would be time-barred, any infringement claims are also barred.  *Webster*, 955 F.3d at 1275-76 (citing *Seven Arts Filmed Entm't Ltd. V. Content Media Corp. PLC*, 733 F.3d 1251, 1255 (9th Cir. 2013)).

In *Webster*, the plaintiff sued for copyright infringement claiming that Dean Guitars had produced and sold replications of guitars containing plaintiff's lighting storm graphic without the plaintiff's consent and without paying royalties for using the design. 955 F.3d at 1272.  The district court found the gravamen of the claim was ownership, so the claim was time-barred and because the ownership claim was time-barred, any remaining infringement claim was also time-barred. *Id.*  The plaintiff argued that the district court erred in concluding that (1) the gravamen of his copyright claim

was ownership because he had registered his copyright and ownership was not disputed in a counterclaim or affirmative defense[2], (2) copyright ownership claims have a different accrual date than copyright infringement claims (citing *Petrella* and arguing that a separate claim accrued each time the graphic was reproduced), and (3) the infringement claim was time-barred because the ownership claim was time-barred. *Id.* at 1275.

The Eleventh Circuit, affirming that the claim was time-barred, agreed that the case concerned copyright ownership, not just infringement, because there was no dispute the defendant had reproduced the graphic. *Id.* There, the plaintiff argued that "he owns the lightning storm graphic and the [defendants] have reproduced it without his consent." *Id.* In finding the gravamen of the claim to be ownership, the court explained that "[t]he parties agree that [defendant] has reproduced the graphic on several guitar models without [plaintiff's] permission, *leaving ownership the only disputed issue*." *Id.* (emphasis added). The Court affirmed that the plaintiff had reason to know that his alleged rights were being violated more than three years before, when he learned that the defendant was producing additional guitars with the lighting image. *Id.* at 1276. His copyright claim accrued then and as such, was time-barred. *Id.* The court held "to the extent that [the plaintiff] asserts a separate copyright infringement claim, that claim is also barred." *Id.* at 1277 (citing *Seven Arts Filmed Entm't*, 733 F.3d at 1255; *Calhoun*, 298 F.3d at 1236 & n.5.

*Black Box Royalties* dealt with royalty payments to the estate of a musician and songwriter— the defendants failed to pay royalty payments from 1999 to 2011. 2017 WL 3508727 at *1. In 2011, the plaintiffs requested an accounting for past-due royalties. *Id.* Finding the results "unrealistically

---

[2] Mr. Vacanti has not yet filed an Answer. However, if and when Mr. Vacanti does so, it will include a defense and counterclaim that Mr. Conley's iteration of the software is a derivative work of Mr. Vacanti's previous iterations of foundations of the software. It will also include a defense and counterclaim that Mr. Conley's copyright registrations are invalid for failure to include Mr. Vacanti as a contributor to the software and failure to identify Mr. Vacanti's pre-existing work on the foundation of the software in his copyright applications.

6

low," plaintiffs filed suit for breach of contract, fraud, and copyright infringement in 2015. *Id.* The court found the copyright infringement claims time-barred because plaintiffs had actual knowledge of the infringement in 2011 when defendant provided documents to plaintiffs showing it was exercising ownership over the plaintiffs' compositions—more than three years after filing suit. *Id.* at *6. The plaintiffs argued the separate-accrual rule, which provides that each time an infringing work is reproduced or distributed the infringer commits a new wrong and statute of limitations runs separately from each accrual, applied so the copyright claim was not time-barred. *Id.* (citing *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969 (2014)). Rejecting this argument, the court explained the separate accrual rule does not apply "where the gravamen of the claims involve copyright ownership, not infringement." *Id.* (citing *Seven Arts Filmed Entm't*, 733 F.3d at 1255)). There, the court found that "the gravamen of Plaintiffs' copyright claims is ownership because Plaintiffs assert that Defendants have no right to copy, sell, distribute, or license any of the disputed songs. In other words, Plaintiffs claim that Defendants do not own the disputed songs." *Id.*

Mr. Conley's SAC alleges a straight-forward copyright ownership dispute. Mr. Conley and Mr. Vacanti marketed and licensed the Copyrighted Software together for years. SAC ¶¶ 11-14. Then, Mr. Conley walked away in July 2019, and Mr. Vacanti kept using the software but stopped paying Mr. Conley. SAC ¶¶ 11-13, 16-21, 25, 27, 60, 70-71. There are no allegations that Mr. Conley believed that Mr. Vacanti stopped selling, licensing, or distributing the Copyrighted Software after Mr. Conley's departure—the opposite is true. Mr. Conley alleges that after July 1, 2019, Mr. Vacanti continued to license the Copyrighted Software, and withheld payments for those licenses. SAC ¶¶ 16, 17, 62 (alleging Mr. Vacanti "wrongfully asserted dominion over another of Conley's property (namely, the Copyrighted Software that Conley created, developed, and owns) by licensing the Copyrighted Software without Conley's permission, authorization, or consent or a valid license." According to Conley, this "conduct is inconsistent with Conley's ownership rights in the Copyrighted

7

Software."  SAC ¶ 63.  Mr. Conley did not file his Complaint until February 28, 2023 although he learned or reasonably should have learned that his ownership rights were being violated in July 2019 when he stopped receiving payments —more than three years before filing the Complaint.  *See* Doc. 1 (original Complaint).

The gravamen of Mr. Conley's claim is ownership, and Mr. Conley expressly states this in the SAC.  The SAC alleges that Mr. Conley "owns" the "Copyrighted Software" many times.  *See* SAC ¶¶ 7, 22, 32, 56, 58, 61, 62, 63, 75.  Mr. Conley asserts that Mr. Vacanti has no right to copy, sell, distribute, or license the Copyrighted Software.  SAC ¶¶ 25, 34, 39(b), 51.  Mr. Conley alleges "Defendant agreed and promised that he would divide equally all revenues <u>from the post-July 1, 2019</u> sale and/or licensing of the Copyrighted Software between Conley and Defendant in exchange for a license to use and market the Copyrighted Software owned by Conley."  SAC ¶ 75 (emphasis added).

Similar to the plaintiffs in *Black Box* and *Webster*, Mr. Conley asserts that Mr. Vacanti violated his copyrights by "copying, displaying, and distributing the Copyrighted Software and/or making derivatives of said works without Conley's authorization in violation of 17 U.S.C. §§ 106, 501 and after the effective date of registration for the Copyrighted Software."  SAC ¶ 34 (alterations to verb tense omitted).  Mr. Conley alleges that Mr. Vacanti violated other of Mr. Conley's ownership rights in 2019, when he stopped receiving payments for software licenses.  SAC ¶¶ 16-20 (alleging that Mr. Conley "was not properly compensated for the sale of licenses for the Copyrighted Software from July 1, 2019, to date" and that "failure to compensate Conley for his share of revenues" was a material breach, terminating the license).  Mr. Conley further alleges that (1) "Defendant's use of the Copyrighted Software was contingent upon Defendant paying Conley his agreed-upon share of revenues derived from the sale, licensing, and marketing of the Copyrighted Software," (2) Conley "owns" the Copyrighted Software, and (3) after July 2019, "Defendant's continued use of the

Copyrighted Software . . . was done without Conley's permission, authorization, or consent, and infringed on Conley's copyrights." SAC ¶¶ 18-23.

Additionally, as an alleged partner in the business to develop, market, and license Actionable Agile (SAC ¶¶ 11-12, 27), Mr. Conley knew or had reason to know in 2019 that Mr. Vacanti, as an owner of ActionableAgile, continued operating the LLC to market and license the Actionable Agile software to third parties and was claiming ownership of the software. SAC ¶¶ 16, 17, 62, 75-76, Exhibit B (copyright notice). *See Zahedi v. Miramax, LLC*, 2022 WL 4596551, at *8 (C.D. Cal. Aug. 19, 2022) (explaining that where the plaintiff "actually knew that Miramax was exploiting a photograph of which he claimed ownership without giving him credit or royalties, his failure to bring suit [within three years] to assert his ownership rights is fatal to his case"); *White v. Warner-Tamerlane Publ'g Corp.*, No. CV 16-5831-PSG, 2017 WL 4685542, at *3 (C.D. Cal. May 22, 2017) (granting motion to dismiss copyright ownership claim when the parties had a preexisting business relationship and an agreement regarding the music track at issue, plaintiffs were aware of defendants' use of the track years earlier, and defendants repudiated plaintiffs' rights by registering their copyright in the track, emphasizing plaintiffs' knowledge of defendants' use).

As such, once Mr. Conley stopped receiving "royalty" payments in 2019 while Mr. Vacanti continued on in the business, exercising ownership over Actionable Agile, Mr. Conley "learned, or should as a reasonable person have learned, that the defendant was violating his ownership rights." *Webster*, 955 F.3d at 1276; *Santa-Rosa v. Combo Recs.*, 471 F.3d 224, 228 (1st Cir. 2006) (finding that openly and notoriously selling records without paying royalties constituted plain and express repudiation of ownership). Because Mr. Conley failed to bring his copyright claim within three years of learning that Mr. Vacanti was violating his ownership rights—once he stopped receiving royalty payments—the Copyright Act's statute of limitations bars his ownership and infringement claims. *Webster*, at 1277.

9

**B. The Copyright Act preempts those state claims that seek to enforce the exclusive rights afforded under the Act.**

The Copyright Act grants to copyright holders the exclusive right "to reproduce the copyrighted works, to prepare derivative works, and to distribute copies to the public." 17 U.S.C. § 106. The Act also preempts all state law claims that seek to vindicate one of the exclusive rights found in § 106, or its equivalent. *Foley v. Luster*, 249 F.3d 1281, 1285 (11th Cir. 2001); 17 U.S.C. § 301(a). Preemption occurs if the rights at issue: (1) "fall within the subject matter of copyright set forth in sections 102 and 103," and (2) "are equivalent to the exclusive rights of section 106." *Crow v. Wainwright*, 720 F.2d 1224, 1225-26 (11th Cir. 1983). The Eleventh Circuit has adopted the "extra element" test; to determine whether a particular state law claim is preempted under the second prong, courts consider "whether the state law claim contains an extra element for recovery that 'changes the nature of the action so that it is *qualitatively* different from a copyright infringement claim.'" *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1549 (11th Cir. 1996). The "extra element test is not a rote comparison of the elements of the two claims," but an inquiry of whether an extra element distinguishes the rights from those afforded by the Copyright Act. *Psychic Readers Network, Inc. v. Take-Two Interactive Software, Inc.*, No. 17-61492-Civ, 2018 WL 1517690, at *3 (S.D. Fla. Feb. 5, 2018).

Here, the Copyrighted Software meets the first prong because it falls within the subject matter of copyright. SAC ¶¶ 4, 7. Thus, the question is whether the rights Mr. Conley seeks to vindicate with the state law claims are equivalent to the Copyright Act's exclusive rights. With respect to the FDUTPA and civil theft claims, the rights are equivalent.

1. Mr. Conley's FDUTPA claim is preempted by the Copyright Act.

The Copyright Act preempts a FDUTPA claim premised on allegations of copying. *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1354 (S.D. Fla. 2017); *see also Marc Anthony Builders, Inc. v. Javic Props., LLC*, No. 8:11-CV-00432-EAK, 2011 WL 2709882, at

10

*4 (M.D. Fla. July 12, 2011) (finding a FDUTPA claim premised on "intentionally and knowingly copying" is preempted by the Copyright Act); *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1494 (11th Cir. 1990) ("A claim for unfair competition based upon allegations of copying, and in the absence of proof of any element of unfair competition other than copying, is clearly preempted by the Act.").

In *Tecnoglass*, the plaintiff alleged that the defendant, RC Home, "misappropriated Tecnoglass's drawings, used the drawings in RC Home's NOA applications, and represented falsely to Miami-Dade County that the drawings belonged to RC Home." *Tecnoglass, LLC v. RC Home Showcase, Inc.*, 301 F. Supp. 3d 1267, 1274 (S.D. Fla. 2017). This court held that "these allegations precisely constitute a reverse passing off claim." *Id.* (citing *Dastar Corp. v. Twentieth Cent. Fox. Film. Corp.*, 539 U.S. 23, 27 n.1 (2003)). Thus, the plaintiff's claim amounted to "no more than that RC Home misrepresented to Miami-Dade County that the technical drawings were its own, which failed under *Dastar* because it was "no more than a claim for copyright infringement." *Id.*

Here, to the extent Mr. Conley has pleaded a FDUTPA claim, it does no more than restate his copyright claim, and therefore should be dismissed. Similar to the allegations in *Tecnoglass*, Mr. Conley alleges that he is the sole owner of the Copyrighted Software, that Mr. Vacanti misappropriated the Copyrighted Software and sold it as his own. SAC ¶¶ 51, 53. Mr. Conley further alleges that consumers could be confused by Mr. Vacanti's use of the Copyrighted Software. SAC ¶ 53. These allegations clearly state a copyright claim; thus, the FDUTPA claim is preempted.

> 2. Mr. Conley's civil theft claim is preempted by the Copyright Act to the extent it seeks redress for unauthorized possession of the Copyrighted Software.

Mr. Conley's civil theft claim seeks to vindicate rights that are not qualitatively different from the bundle of rights afforded to copyright owners in 17 U.S.C. § 106 and, thus, attempts to restate the time-barred copyright infringement claim. Specifically, the heart of the civil theft claim is that Mr.

Vacanti exploited and continues to exploit Mr. Conley's copyrighted materials by "licensing the Copyrighted Software without Conley's permission, authorization, or consent or a valid license." SAC ¶¶ 62, 64 ("Defendant misappropriated . . . the Copyrighted Software . . . ").  Mr. Conley further alleges that as a direct result of Mr. Vacanti's conduct, Mr. Conley was "depriv[ed] of his right and ability to properly license or sell the Copyrighted Software to person(s) and entity(ies)."  SAC ¶ 65.  Mr. Conley's civil theft claim—based on Mr. Vacanti's licensing of the Copyrighted Software—does not contain an "extra element" to avoid preemption and as a result, must be dismissed. *Cf. Fuss v. Bensch*, 601 F. Supp. 3d 1329, 1334-35 (N.D. Ga. 2022) (finding conversion claim preempted where it was equivalent to a claim of copyright infringement).  Though at first blush it may appear that dominion and control are additional elements of civil theft, "not just any extra element will do." *Archer v. Holmes*, No. 1:17-cv-2051, 2018 WL 534475, at *3 (N.D. Ga. Jan. 23, 2018).  "Rather, only that extra element which 'changes the nature of the action so that it is *qualitatively* different from a copyright infringement claim' will serve to prevent preemption." *Id.* at **5-6 (emphasis in original) (quoting *Bateman*, 79 F.3d at 1549).

In *Hoeltzell v. Caldera Graphics*, 2011 WL 13223709, at *2-4 (S.D. Fla. Nov. 16, 2011), this district found a civil theft claim preempted by the Copyright Act where the defendant allegedly infringed upon the plaintiffs' copyrights in photographs by using them without permission and profiting from them.  To support their claim for civil theft, the plaintiffs alleged that the defendant knew of the plaintiffs' property interest in the photographs, but nevertheless appropriated the images for their own use, thereby committing a civil theft under state law. *Id.* at *3.  This court explained that "[a]s Florida's courts have recognized, where theft of a copyrighted work is alleged, the rights protected by state law are no different from the rights protected by the Copyright Act." *Id.*  The court held that the plaintiffs' claims sought to subject the defendant "'to state-created liability simply for making an unsanctioned duplication of another's work product (when that work product, whether copyrighted or

12

not, is within the subject matter of copyright),' which is the situation in which copyright preemption is most commonly applied." *Id.*

In this case, the basis for Mr. Conley's civil theft claim is that Mr. Vacanti exercised dominion and control *over the Copyrighted Software*, and that by doing so Mr. Vacanti acted in a manner inconsistent with Mr. Conley's rights—namely Mr. Conley's copyright rights under section 106, including his right to license the Copyrighted Software. SAC ¶ 66. Mr. Conley's civil theft claim is equivalent to a claim of copyright infringement and is therefore preempted. *Hoeltzell*, 2011 WL 13223709, at *2-4.

### C. Mr. Conley's claim for civil theft based on purported payments owed under the parties' agreement fails.

Theft and contract debt are two very different things. The portion of Mr. Conley's claim for civil theft related to alleged "unpaid royalty payments that were due and owing to Conley in connection with the licensing of the Copyrighted Software" is derivative of Mr. Conley's breach of contract claim. *Compare* SAC ¶¶ 61, 64-66 (civil theft) *with* SAC ¶¶ 68-73 (breach of contract). Indeed, to support his civil theft claim, Mr. Conley alleges that the parties entered into an agreement to "divide equally all revenues from the sale and/or license of the Copyrighted Software," that Mr. Vacanti failed to make such payments in violation of the agreement, and that "[i]n retaining and failing to pay unpaid royalty payments that were due and owing to Conley in connection with the licensing of the Copyrighted Software, Defendant wrongfully asserted dominion over Conley's property that is inconsistent with Conley's ownership rights therein." SAC ¶¶ 57-61.

Mr. Conley's breach of contract claim is based on the same alleged agreement and conduct—namely, that Mr. Vacanti's failure to pay Mr. Conley his share of revenues for licenses constitutes a material breach of the agreement. SAC ¶¶ 68-72. Mr. Conley's claim for civil theft arises from his contract with Mr. Vacanti—Mr. Vacanti's alleged failure to abide by that contract, if true, would

13

constitute a breach entitling Mr. Conley to compensatory damages; it would not constitute theft. *See Adv. Surgical Techs., Inc. v. Automated Instruments, Inc.*, 777 F.3d 1504, 1507 (11th Cir. 1985) (civil theft claims under Florida statutes "section 812.014 does not apply to ordinary breaches of contract . . . ."). Finally, Mr. Conley alleges the same damages stemming from both claims: "As a direct result [of Defendant's conduct described above] Conley has sustained damages in the form of unpaid revenues from Defendant's unauthorized sale of licenses of the Copyrighted Software." SAC ¶¶ 66, 73.

Such contract claims masquerading as tort claims are not sustainable. *Id.*; *see also Gambolati v. Sarkisian*, 622 So.2d 47, 50 (Fla. 4th DCA 1993) ("[A]n action in tort is inappropriate where the basis of the suit is a contract, either express or implied.") (quoting *Belford Trucking Co. v. Zagar*, 243 So.2d 646, 648 (Fla. 4th DCA 1970)). Mr. Conley's civil theft claim is without substantial factual or legal support. If dismissed, Mr. Vacanti respectfully requests the right to seek his attorneys' fees incurred in defending against this claim. Fla. Stat. § 772.11(1).

> **D. If the Court dismisses Mr. Conley's federal claim under the Copyright Act, it should in its discretion decline to exercise supplemental jurisdiction over Mr. Conley's civil theft, breach of contract, unjust enrichment, promissory estoppel, and any other remaining state law claims. Diversity jurisdiction has not been pled.**

A district court may decline to exercise supplemental jurisdiction over such a claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997). "Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." *Id.* at 1353. "[S]tate courts, not federal courts, should be the final arbiters of state law." *Ingram v. Sch. Bd. of Miami-Dade Cty.*, 167 Fed. Appx. 107, 108 (11th Cir. 2006); *Hicks v. Moore*, 422 F.3d 1246, 1255 n.8 (11th Cir. 2005) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); *Raney v.*

*Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

Mr. Conley has not alleged that diversity jurisdiction exists nor satisfied the amount-in-controversy requirement. *See* 28 U.S.C. § 1332(a). While dismissal may inconvenience the parties, such inconvenience does not justify retaining jurisdiction over claims that should be decided by state courts, and there is no independent basis for original federal jurisdiction or reason based in judicial economy, fairness, or comity that justifies the Court retaining supplemental jurisdiction. In light of the often articulated preference for state courts to be the final arbiters of state law, the Court should in its discretion decline to exercise supplemental jurisdiction over Mr. Conley's remaining state law claims if the federal claim under the Copyright Act is dismissed.

## CONCLUSION

Mr. Conley knew that after July 1, 2019, Mr. Vacanti was continuing the business of marketing and licensing the Copyrighted Software. SAC ¶ 70-72, 75-78. Mr. Conley stopped receiving royalty payments, and knew Mr. Vacanti was licensing and exercising ownership over the Copyrighted Software. *See* SAC ¶¶ 62-64, 71. As such, Mr. Conley's copyright ownership claim accrued at that point, and to be timely, must have been filed on or before July 1, 2022 (three years after he stopped receiving royalty payments and at that point, "learn[ed], or should as a reasonable person have learned" that his ownership rights were being violated). The copyright ownership claim is time-barred, and as a result, any infringement claim is also barred. *Webster*, 955 F.3d 1270.

Mr. Conley's other claims fail because they rely on the same facts and lack essential elements of the bootstrapped claims and/or pleading requirements. The Copyright Act preempts state law claims whose rights are equivalent to the exclusive rights in § 106 of the Copyright Act. Mr. Conley's

15

FDUTPA and civil theft claims are preempted by the Copyright Act, and to the extent not preempted, the civil theft claim fails as it is based on the breach of an alleged contract.

For the foregoing reasons, Mr. Vacanti respectfully requests the Court dismiss Counts 1-3 of the SAC with prejudice and award Mr. Vacanti his costs and attorneys' fees incurred in defending this baseless action pursuant to 17 U.S.C. § 505, 15 U.S.C. § 1117, and Fla. Stat § 772.11(1).  Mr. Vacanti further requests that the Court decline to exercise supplemental jurisdiction over the remaining state law claims (Counts 4-6) and dismiss the SAC in its entirety.

Dated: June 15, 2023  /s/ *Luke R. VanFleteren*
**STINSON LLP**
Luke R. VanFleteren (# 1001050)
1625 N. Waterfront Parkway, Suite 300
Wichita, Kansas 67206
Telephone: (316) 265-8800
Fax: (316) 265-1349
luke.vanfleteren@stinson.com

David R. Barnard (#47127MO)
1201 Walnut Street, Suite 2900
Kansas City, Missouri 64106
Telephone: (816) 691-2608
Fax: (816) 412-1017
david.barnard@stinson.com
(*Pro Hac Vice in progress*)

Adrianna Chavez (#0305011AZ)
1850 N. Central Avenue, Suite 2100
Phoenix, Arizona 85004
Telephone: (602) 279-1600
Fax: (602) 240-6925
adrianna.chavez@stinson.com
(*Pro Hac Vice in progress*)
**ATTORNEYS FOR VACANTI**

16

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record in this case.

Dated: June 15, 2023 /s/ Luke R. VanFleteren