UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-60384-CIV-SINGHAL

TODD CONLEY,

    Plaintiff,

v.

DANIEL S. VACANTI,

    Defendant.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Daniel S. Vacanti's ("Defendant" or "Vacanti") Motion to Dismiss (DE [25]), Plaintiff Todd Conley's ("Plaintiff" or "Conley") Motion to Dismiss Second Amended Counterclaims (DE [42]), and Plaintiff's Motion for Extension of Time (DE [48]).  For the reasons discussed below, the Defendant's Motion to Dismiss is granted in part and denied in part and Plaintiff's Motion to Dismiss Second Amended Counterclaims is granted in part and denied in part.  Plaintiff's Motion for Extension is also granted.

### I.    BACKGROUND

In August 2013, Conley and Vacanti agreed to collaborate on the development of the Actionable Agile Tool software.  Conley was responsible for the creation and development of the Actionable Agile Tool software while Vacanti was responsible for providing customer-oriented services relating to the Actionable Agile Tool software, including sales, marketing, training, and support.  All revenues from the sale of Actionable Agile Tool software were to be divided equally between Conley and Vacanti, per agreement between the parties.

In 2016, Conley developed a different variation of the Actionable Agile Tool

software and registered it with the US Copyright Office.[1]  Conley is the sole author listed on the copyright, and he claims he is the "sole and exclusive owner of all copyrights" to the Actionable Agile software.  (DE [22-1]) (Exhibit A).  Conley and Vacanti proceeded to sell this version of the Actionable Agile Tool software until June 2019, and Conley properly received his share of the proceeds.  From July 1, 2019 and onwards, Vacanti continued to sell and license the Actionable Agile Tool software tool but did not provide Conley with his 50% share of the revenue, in violation of the parties partnership agreement.  As such, Vacanti's continued use and licensing of the Actionable Agile Tool software following July 1, 2019 amounted to a breach of the terms of the joint venture / partnership agreement.

## II.     LEGAL STANDARD

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a).  Rule 8's pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Rather, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Authority*, 566 U.S. 449 (2012).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally

---

[1] The Second Amended Complaint does not mention whether the prior version of the Actionable Agile Tool software was registered with the US Copyright Office.

"limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).  The court must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true*.  See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

### III.  DISCUSSION

#### a.  Defendant Vacanti's Motion to Dismiss Complaint

Vacanti seeks to dismiss the Counts in Conley's complaint for various reasons. First, Vacanti seeks to dismiss Count I for Copyright Infringement because he argues it is really a time-barred copyright ownership claim that Plaintiff is disguising as an infringement claim. Next, Vacanti seeks to dismiss Count II, alleging a violation of Florida's Deceptive and Unfair Trade Practices ("FDUTPA") and Count III, alleging civil theft, because both counts are preempted by the Copyright Act.  Finally, Defendant seeks to dismiss Count IV, Count V, and Count VI because the C ourt only has supplemental jurisdiction over these claims, and once Count I—a copyright infringement claim brought under the Copyright Act—is dismissed, the Court should dismiss the rest of the state-law claims.

At this time, it is not clear that Count I is a time-barred copyright ownership claim. As such, Count I and Counts IV, V, and VI are not dismissed.[2]  Counts II and III, however,

---

[2] The Court notes that diversity jurisdiction has not been pled.  To the extent that the Court later dismisses Count I, it is well within its discretion to dismiss the state law claims in Counts IV, V, and VI.  *Raney v.*

are preempted by the Copyright Act.  Accordingly, they are dismissed with prejudice.

### i. Count I is Plausibly a Claim for Copyright Infringement

The Copyright Act provides a three-year statute of limitations for actions brought pursuant to its provisions. 17 U.S.C. § 507(b).  Specifically, a party bringing a suit pursuant to the Copyright Act must do so within three years of the claim accruing.  *Id.* Ordinarily, a copyright infringement claim accrues "when a plaintiff has a complete and present cause of action," which is "when an infringing act occurs."  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 (2014).  But some circuits, including the Eleventh Circuit, draw a different accrual-line for copyright ownership claims.[3]  In *Webster v. Dean Guitars*, the Eleventh Circuit held that a copyright ownership claim accrues only once: "when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his ownership rights."  955 F.3d 1270, 1276 (11th Cir. 2020). Additionally, "where the gravamen of a copyright infringement suit is ownership, and a freestanding ownership claim would be time-barred, any infringement claims are also barred." *Id.* at 1277 (citing *Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1255 (9th Cir. 2013)); *see also Calhoun v. Lillenas Publishing,* 298 F.3d 1228, 1236, n.5 (Birch, J., concurring).

"At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." *Keira v. U.S. Postal Inspection Serv.*, 157 F. App'x 135, 136 (11th Cir. 2005) (internal quotation marks and citation omitted).  In other words,

---

*Allstate Ins*. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").  To prevent a potential dismissal of all claims at a later date, Plaintiff is granted leave to amend its complaint to plead, in the alternative, diversity jurisdiction.

[3] Unlike a copyright infringement claim, a dispute over whether copying infringed a plaintiff's rights or whether the materials taken were original, a copyright ownership claim is a dispute over the proper ownership of the copyright.

4

it must be apparent from the face of the complaint that the claim is time barred. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

Here, it is not clear from the face of the complaint that Conley's claim is time-barred. Count I is a claim for copyright infringement, not copyright ownership. Moreover, from the four corners of the Second Amended Complaint it is not clear that the gravamen of the copyright infringement claim is ownership. Conley frames the allegations as an infringement claim and that he is the sole and exclusive owner of the copyright at issue. Moreover, the Court must accept Conley's allegations as true and construe all plausible inferences in his favor. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). While it is certainly not clear that the gravamen of Conley's infringement claim is not ownership, this ambiguity must be construed in Conley's favor. *See Hishon*, 467 U.S. at 73. Count I of the Second Amended Complaint is therefore not dismissed.[4]

ii. **Count II and Count III are preempted by the Copyright Act.**

The Copyright Act provides exclusive rights to copyright owners to reproduce the work, prepare derivative works, or distribute copies of the work. 17 U.S.C. § 106. The Copyright Act also preempts all state law claims that vindicate one of the exclusive rights found in 17 U.S.C. § 106. 17 U.S.C. § 301(a).[5] A state law claim is preempted if the right it seeks to vindicate (1) "falls within the subject matter of copyright set forth in sections 102 and 103," and (2) "is equivalent to the exclusive rights of section 106." *Crow v.*

---

[4] "Generally, whether a claim is barred by the statute of limitations should be raised as an affirmative defense in the answer." *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1328 (S.D. Fla. 2012). In fact, Defendant already filed an answer where he did so. (DE [40]). Once the pleadings have closed, Defendant is free to file a 12(c) motion for judgment on the pleading with the same claim that the gravamen of the infringement claim is ownership and that Count I is time-barred.

[5] "[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, . . . are governed exclusively by this title. . . . [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." 17 U.S.C. § 301.

5

*Wainwright*, 720 F.2d 1224, 1225-26 (11th Cir. 1983). For a state law right to be deemed non-equivalent to an exclusive right in section 106, the state law must contain an extra element for recovery that "changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1549 (11th Cir. 1996) (citations omitted). If there is no extra element, the state law is considered equivalent and preempted by the Copyright Act. This method of determining whether the Copyright Act preempts a state law claim is referred to as the "extra element" test.

The parties do not dispute that Count II under FDUTPA and Count III for civil conversion fall within the subject matter of the copyright act. The only question then is whether the state law claims are equivalent to the exclusive rights of section 106.

### 1. Count II: FDUTPA

Plaintiff argues that two portions of its FDUTPA claim under Count II go beyond what the Copyright Act protects. First, Conley argues that, in addition to Vacanti reproducing, distributing, and displaying the alleged copyright material, Vacanti also violated FDUTPA through the additional acts of "using, selling, and/or licensing" the copyrighted software. (DE [26] at 10). Second, Conley contends its FDUTPA allegations allege that Vacanti's actions are likely to deceive consumers, conduct beyond what is protected by the Copyright Act. (DE [26] at 10). Notwithstanding these arguments, Conley has failed to demonstrate how its FDUTPA claim is qualitatively different from a copyright infringement claim.

#### a. Using, selling, and/or licensing

The Copyright Act protects a copyright owner's exclusive rights to reproduce, display or distribute the copyright work. 17 U.S.C. § 106. Plaintiff argues that the alleged

conduct underlying his FDUTPA claim goes beyond that conduct—"namely that 'Defendant's acts of *using, selling, and/or licensing* the Copyrighted Software to third parties . . .'" is qualitatively different from section 106. (DE [26] at 10) (emphasis in original) (citing (DE [22] at 8) (Second Amended Complaint). The Court, however, is unpersuaded. "Using," "selling," and "licensing" are synonyms of "reproducing," "displaying," and "licensing;" they do not change the action so that it is qualitatively different from a copyright infringement claim. *See Bateman v. Mnemonics, Inc.*, 79 F.3d at 1549. Thus, this allegation in Count II is dismissed with prejudice.

### b. Deceiving Consumers

Claims asserted pursuant to FDUTPA are not *per se* preempted by the Copyright Act. *Donald Frederick Evans & Assocs., Inc.,* 785 F.2d 897, 915 (11th Cir.1986). To establish a claim under FDUTPA, a plaintiff must show (1) a deceptive or unfair practice, (2) causation, and (3) actual damages. *E.g., Millenium Travel & Promotions, Inc. v. Classic Promotions & Premiums, Inc.,* 2008 WL 2275555, at *3 (M.D.Fla. June 2, 2008). If the only unfair or deceptive practice is the same conduct which forms the basis of the plaintiff's copyright claim, the FDUTPA claim is preempted. *Id*.

Plaintiff claims that his Second Amended Complaint pled additional facts that go above and beyond what 17 U.S.C. § 106 protects because he alleges that Defendant's actions are likely to deceive consumers into thinking that Defendant is affiliated with Plaintiff. Other courts have found this element of consumer confusion to satisfy the extra element test. *See, e.g.*, *Pegasus Imaging Corp. v. Northrop Grumman Corp.*, 2008 WL 5099691, at *5 (M.D. Fla. Nov. 25, 2008). Here, however, Plaintiff has not plead sufficient facts for the Court to properly evaluate the consumer confusion claim. Aside from some conclusory allegations in paragraphs 53 and 54 of the Amended Complaint, the Court is

7

left guessing as to how consumers are confused and how that confusion would cause damages. Conclusory allegations cannot form the basis of a well-pleaded complaint. *See Jackson*, 372 F.3d at 1262. Since Conley has not offered any other support for its consumer deception claims, he has not sufficiently pled a FDUTPA claim. *See Millenium Travel & Promotions, Inc.*, 2008 WL 2275555, at *3. Accordingly, this allegation in Count II is dismissed with prejudice.

### 2. Civil theft

The Second Amended Complaint alleges that Vacanti committed civil theft in two ways: Conley argues (1) that Defendant "has wrongfully asserted dominion over" the copyrighted material, and (2) that Defendant wrongfully asserted dominion over the alleged unpaid royalty payments. (DE [22] at 10-12). Neither action, however, is qualitatively different from what is protected by the Copyright Act. As such, Count III is preempted and dismissed with prejudice.

Conley argues that civil theft requires Conley to prove scienter, whereas Section 106 of the Copyright Act does not. Conley further argues that scienter is an additional element that renders civil theft qualitatively different from the exclusive rights protected in the Copyright Act. (DE [26] at 12). But that is not the case. At their core, both a copyright infringement claim and a civil theft claim argue that another individual has wrongfully asserted control over material that does not rightfully belong to them. Qualitatively, they are the same claim, notwithstanding the additional scienter requirement. *See Archer v. Holmes,* 2018 WL 534475, at *3 (N.D. Ga. Jan. 23, 2018) (finding that not just any extra element will satisfy the extra element test).

Conley cites one case, *Korman v. Iglesias*, to support his position that civil theft is qualitatively different. 736 F. Supp. 261 (S.D. Fla. 1990). But as Vacanti points out, this

8

case is inapposite. In finding that civil theft was qualitatively different, *Korman* relied on the unique circumstances where the parties were co-authors of the copyrighted material. *Id.* at 264-65. In this case, Conley unequivocally stated that he is the sole owner of the copyrighted material. *See, e.g.*, (DE [22] at 5). Our case is therefore not a case of co-authorship, and Conley's reliance on *Korman* is misplaced. Count III is therefore dismissed with prejudice.

### b. Conley's Motion to Dismiss Second Amended Counterclaims

Conley seeks to dismiss all three counts in Vacanti's Second Amended Counterclaims. With respect to Count I, which seeks relief in the form of a declaratory judgment that Conley's copyrights are invalid, Conley argues that the Court lacks subject matter jurisdiction to entertain the claim since it does not have the authority to cancel a copyright. Even if the Court did have the authority to cancel a copyright, Conley argues that a declaratory judgment would serve no purpose because the validity of Conley's copyrights would be resolved through Count I of Conley's complaint (copyright infringement). As to Counts II (breach of contract) and III (breach of fiduciary duty), Conley argues they should be dismissed because they are insufficiently pled and fail to state a claim.

### i. District Courts are Unable to Declare Copyrights Invalid.

Count I of Vacanti's Second Amended Counterclaims seeks a declaratory judgement from the Court that Conley's copyrights are invalid. "The Eleventh Circuit has not yet addressed the role of courts in the cancellation of copyright registrations," *Pk Studios, Inc. v. R.L.R. Invs., LLC*, 2016 WL 4529323, at *10 (M.D. Fla. Aug. 30, 2016). Other courts have, and they each have concluded that federal courts have no authority to cancel copyright registrations. *See, e.g., Brownstein v. Lindsay*, 742 F.3d 55, 75 (3d

9

Cir. 2014) ("We hold that courts have no authority to cancel copyright registrations because there is no statutory indication whatsoever that courts have such authority."). The Court sees no reason to break from this trend.[6] Federal courts do not have the authority to cancel or render invalid a copyright, leaving this Court without jurisdiction to entertain the claim.[7] As such, Count I is dismissed with prejudice.

### ii. Count II is Dismissed as Insufficiently Pled.

To properly plead a breach of contract claim, Florida law requires that a plaintiff demonstrate "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T—Mobile USA, Inc.,* 564 F.3d 1256, 1272 (11th Cir.2009) (citations omitted). "To prove the existence of a contract, a plaintiff must plead [and establish]: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Id.* If a plaintiff alleges a breach of an oral contract, he must also establish that the "parties mutually assented to 'a certain and definite proposition' and left no essential terms open." *Uphoff v. Wachovia Securities, LLC,* 2009 WL 5031345 *3 (S.D.Fla.2009) (quoting *W.R. Townsend Contracting, Inc. v. Jensen Civ. Const., Inc.*, 728 So. 2d 297, 300 (Fla. Dist. Ct. App. 1999)). Count II of Vacanti's Second Amended Counterclaims does not clearly allege how the breach of the contract caused him damages. Accordingly, Count II is dismissed without prejudice.

---

[6] Vacanti has provided one case from the Northern District of Florida where a district court found it had the authority to declare a copyright invalid. *See Thomas Home Corp. v. Reve Dev. Corp.*, 2005 WL 8164951, at *2 (N.D. Fla. Mar. 18, 2005). But *Thomas* relies on inapposite *patent* infringement cases and two cases from the Eleventh Circuit that did not squarely confront whether federal courts can declare a copyright invalid. The Court thus finds *Thomas* unpersuasive, especially in light of the plethora of cases concluding that federal courts cannot declare a copyright invalid.

[7] The Constitution limits the power of the judiciary to deciding "Cases" and "Controversies," U.S. CONST. ART. III, § 2, cl. 1, and the "case or controversy" requirement demands that each plaintiff has standing to sue. For a plaintiff to have standing, he or she must allege an injury that can be redressed through a favorable judicial outcome. Here, Vacanti has not done that since the Court would be unable to provide the redress that he seeks. Vacanti is thus without standing to assert this claim, rendering the Court without jurisdiction to entertain it.

Count II of Vacanti's Second Amended Counterclaims alleges that Vacanti and Conley had an agreement to "develop, market, maintain, and update" Actionable Agile software and that as part of this agreement, Conley was responsible for maintaining and providing critical updates to the software. (DE [40] at 41). In exchange for the work, Conley received a share of the profits. (DE [40] at 41). These allegations suffice to show that there was an agreement between the parties that was supported by consideration; in exchange for providing critical updates to the software, Conley received a share of the profits. *See Vega v. T—Mobile USA, Inc.,* 564 F.3d at 1272.

Vacanti next had to prove that Conley breached that agreement. The Second Amended Counterclaims states that Conley breached the agreement by resigning without sufficient notice to allow Vacanti to find someone to replace Conley. (DE [40] at 41). But it is unclear to the Court how Conley's failure to provide sufficient notice amounts to a breach of the oral agreement that Vacanti describes earlier in his Second Amended Counterclaims. Nowhere in the Second Amended Counterclaims does it state that providing notice was bargained for or an essential element of the agreement. In fact, nowhere does it state that the parties even contemplated resignation by either party. It is therefore not clear to the Court how Conley's failure to provide sufficient notice of his resignation can form the basis for the breach of the agreement. As such, Count II is dismissed without prejudice.

### iii. **Vacanti Adequately Alleged that Conley Breached Fla. Stat. § 620.8404.**

"The elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty, (2) the breach of that duty such that (3) is the proximate cause of the (4) plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). Florida law recognizes two kinds of fiduciary relationships: statutory fiduciary relationships and

common law fiduciary relationships. Florida recognizes certain statutory fiduciary relationships codified in Fla. Stat. § 620.8404. Section 620.8404 provides that partners owe each other a duty of loyalty and a duty of care during the "conduct or winding up of the partnership business." *See* Fla. Stat. § 620.8404(2)-(3). Most relevant here, "[a] partner's duty of care to the partnership and the other partners in the conduct and winding up of the partnership business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law." Fla. Stat. § 620.8404(3).

Florida law also recognizes certain common law fiduciary relationships. For example, it recognizes fiduciary relationships when, between two persons, "one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relation." *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002). A fiduciary relationship also exists "wherever one man trusts in and relies upon another." *Quinn v. Phipps*, 113 So. 419, 421 (Fla. 1927) (citations omitted). "An implied fiduciary relationship will [also] lie when there is a degree of dependency on one side and an undertaking on the other side to protect and/or benefit the dependent party." *Masztal v. City of Miami*, 971 So. 2d 803, 809 (Fla. 3d DCA 2007).

Here, Vacanti alleges that Conley breached fiduciary duties related to his participation in the Actionable Agile business under common law and Fla. Stat. § 620.8404. (DE [40] at 42). He further alleges that Conley breached those duties by "(1) misrepresenting Mr. Vacanti's ownership interest in the Actionable Agile software and (2) abandoning the partnership without notice while the parties had ongoing licensing agreements." Conley argues that Vacanti has failed to sufficiently allege the existence of any fiduciary duty under either statutory or common law. (DE [42] at 9). For the reasons

discussed below, Conley's Motion to Dismiss as to Count III is granted in part and denied in part.

As discussed above, Fla. Stat. § 620.8404 provides that one partner owes the other a duty of care "to refrain from engaging in grossly negligent or reckless conduct." Fla. Stat. § 620.8404(3). Vacanti alleged that Conley abandoned the partnership without any real notice, leaving Vacanti without anyone to maintain a working version of the software that Vacanti was still obligated to provide to customers. Conley's actions can rightfully be interpreted as grossly negligent or reckless conduct since it left Vacanti with no viable way to maintain the software. In turn, Vacanti was left with no choice but to offer discounts to customers and then to eventually sell the entire Actionable Agile software at a discount to third party. Such allegations plausibly suggest a breach of fiduciary duty under Fla. Stat. § 620.8404, and since Conley has not offered any evidence or caselaw to the contrary, Conley's Motion to Dismiss as to Count II of the Second Amended Counterclaims is denied.

Vacanti, however, has insufficiently pled the rest of the claims in Count III. Specifically, Vacanti's claim for breach of common law fiduciary duty fails because he did not allege which common law fiduciary duty was breached. He simply states that Conley breached a common law fiduciary duty without any further specification. Without any specification, one cannot deduce whether the allegation is plausible and should survive a motion to dismiss.

To be sure, in Count III Vacanti alleges that Conley breached fiduciary duties, including "the duty of care to the partnership to refrain from engaging in grossly negligent or reckless conduct." (DE [40] at 42). But this language seems to define the fiduciary duties found in Section 620.8404. It does not define the common law fiduciary duties that

13

Vacanti appears to now rely upon and that he cites to in his response to Conley's Motion to Dismiss Second Amended Counterclaims.  (DE [44] at 14).  And to the extent that Conley may have breached these common law duties, Vacanti did not include them in his Second Amended Counterclaims.  As such, the Court cannot consider them when reviewing the sufficiency of Vacanti's pleading.  *See Wilchombe*, 555 F.3d at 959 (limiting review to the four corners of the pleading).  Accordingly, to the extent Count III of Vacanti's Second Amended Counterclaims rests on a breach of a common law duty, it is dismissed with prejudice. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss (DE [25]) is **GRANTED IN PART** and **DENIED IN PART**.  Count II and Count III of the Second Amended Complaint are **DISMISSED WITH PREJUDICE.**  Plaintiff Conley has fourteen (14) days from entry of this order to file an amended complaint.

It is further **ORDERED AND ADJUDGED** that Plaintiff's Motion to Dismiss (DE [42]) is **GRANTED IN PART** and **DENIED IN PART.**  Count I of Defendant's Second Amended counterclaims is **DISMISSED WITH PREJUDICE,** Count II is **DISMISSED WITHOUT PREJUDICE**, and to the extent Count III rests on a breach of a common law fiduciary duty, it is **DISMISSED WITH PREJUDICE** as well. Defendant has fourteen (14) days from entry of this order to file amended counterclaims.

It is further **ORDERED AND ADJUDGED** that Plaintiff's Motion for Extension (DE [48]) is granted.  The Court requests that the parties file a joint scheduling report within fifteen (15) days of entry of this order with reasonable scheduling dates based on the progress parties have made in light of this order.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 2nd day of January 2024.

```
_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE
```

Copies furnished counsel via CM/ECF

15